May it please the Court, William Robinson for the appellant Juan Valdez. I want to focus in particular on the prejudice issues today. First, which standard applies, and second, whether the error was prejudicial under a proper Brecht standard. Obviously, if the Court has questions on the question of federal constitutional error, I'd be prepared to address those as well. The jury in this case was told that, with respect to the target crime, shooting at an occupied building, the fact the defendant was voluntary intoxicated is not a defense and does not relieve defendant of responsibility for the crime. I think you zero in on why it is that the error, assuming there was error, was prejudicial under the Brecht standard, given the fact that Valdez's defense, given the fact that there was evidence that he made repeated threats to kill these folks. He left the scene, came back. He left the scene, came back. The last time he left the scene and came back, it was with a companion who had a gun. He signaled to the guy, which you take – I know all of this is disputed in the evidence, but take it in light of the verdict. Signaled the guy with the gun. His defense was not, I don't remember this, I was too out of it to remember anything about it. He said, I didn't make those threats. That doesn't turn on intoxication. So if you believe – the jury believes   And if you don't believe that it was other people that he actually made the threats, that has nothing to do with whether he was intoxicated or not. Likewise, the going and coming three times has nothing to do with whether he was intoxicated and is basically undisputed. Likewise, the foreseeability that taking a gun is going to mean it gets shot and that somebody can get killed, that has nothing to do with intoxication. It's an objective issue. So all those things being true, then where's the prejudice? Okay. First of all, I'm not going to argue that – it's pretty clear the threats were made. There was evidence as to that fact. And our whole position throughout has been that's not determinative here. If I threaten to kill someone and say, I'm going to come back and get a gun, and then two hours later I come back with a gun and I simply shoot them, that's one thing. But that isn't what happened here. There are threats to kill here made in the context of the friend having gotten beaten up and the return when nobody's there. And there's no dispute about that. But one of the – one of the problems here, of course, is that the instructions on intoxication left the jury to consider those threats without considering the fact of and the extent of Mr. Valdez's intoxication. Well, yes, but the – That's point number one. Okay. But if he's made the threats and he goes back and forth two or three times with them, what does intoxication have to do with it? Let's talk about what happens when he comes back. First of all, the first time they come back, they go and get Mr. Valencia, who ends up being the shooter, and they return. But they don't have the gun. There is no gun there. They're coming back to fight, and that's what they say all along. We want to fight somebody. When they can't get in, some more threats are made. The second time, or the third trip back, they go and get the gun. When they go out and confront the two men who are there, who Mr. Valdez, in his drunken confusion, again, for the second time, wrongly thinks is the bouncer who beat up his friend. When they go back this final time, they have some sticks, they have some weapons, and I believe the two men also are armed, one with a flashlight, the same sort of flashlight, and the other with a piece of metal. And Valdez is – the key thing at that point is Valdez's behavior focusing on these gentlemen, which is simply to call one of them to come out and fight him. That's what he wants to do. The evidence is undisputed as to that fact. And there are no threats to kill made by him on that occasion at all. Well, yeah, but the threat to kill doesn't have to be made simultaneously with the killing. I mean, that seems to me to be the thrust of your brief, which doesn't compute with me. There's a – there's another problem here. Take my hypothetical. I threaten to kill. Two hours later, I shoot. What kind of murder would that be under California law? No doubt about it, that's a first-degree murder. No doubt at all. That's premeditated. That's planned. The jury rejected that in this case. In other words, if what this was was a plan to come back and shoot people with an intent to kill, this is an absolute no question about it first-degree murder. The jury rejected that. Clearly, they were focused on what was going on at the time. Clearly, their verdict of second-degree murder means that they believe this was a momentary heat of passion kind of shooting by Valencia or an implied malice kind of murder where he shoots at a door where there's people behind it. That's where this case stands. So in order to get to Mr. Valdez's culpability as an aider and a better, you have to focus on what's going on with him at that time. What is he doing that's going to facilitate either the target crime of shooting at a building or the crime of murder? And again, the fact that, as Your Honor mentioned, the fact that the evidence about the arm gesture is disputed is a very important fact. Because if, in fact, as one of the two witnesses said, Mr. Valdez does something like this, and at that point Valencia goes and gets the gun, that really looks like he's involved with the act of the shooting. But recall that the second witness, who was the one, Mr. DeHaan, who was standing facing Valdez, says he testified he was looking at him the entire time. He never saw such an arm gesture. It's a very important fact. That jives with what Valdez testified to and also what Valencia testified to. Valencia had no reason to say something other than what actually happened in terms of going to get the gun. He said he decided on his own to go and get the gun to back up Juan if Juan got in a fight. So now, again, we're not talking about a sufficiency of evidence standard here. We're talking about instructional error and how it's prejudicial. Now, think about what this intoxication instructions would have done in terms of the jury's consideration of this case. Number one, as I pointed out earlier, excuse me, it would have allowed them to look at the threat evidence in a different way. This is someone who's really drunk, and when he makes threats like that, you might think of them differently than someone who is sober. Number two, and this is probably more important, at the scene there, the third trip back where the shooting actually happened, the intoxication, the expert who was called, talked about this thing called alcohol myopia, in which someone who is drunk, who's intently focused on something, would fail to notice things going on around him in the periphery. So this was very important to the notion that Valdez lacked the knowledge that Valencia had gone and gotten the gun, which was what his defense was. When Valdez testified, he was surprised when the shots were fired. Now, of course, again, there's parts of his testimony the jury obviously, you know, would not have credited. But on that part, there really is no dispute. He never turned around to look at the guy with the gun. He never said anything to encourage the guy with the gun. In fact, the testimony of both DeHaan and Crisp is that even at the point right before the side, Valdez is still calling on them to come back and fight. That is his sole obsession the entire time. So the intoxication evidence would have put this in a con- not the evidence, but an instruction that would have allowed the jury to consider the facts of intoxication on the knowledge and intent elements of aiding and abetting was absolutely crucial in this case. And again, this was a case where the defense had proposed such instructions, and they were not given, and the courts that have considered this have all agreed that these instructions were misleading and confusing and would have led the jury to think that they couldn't consider intoxication. The evidence of the extent of his intoxication, although there wasn't a quantitative analysis done, not for lack of trying, as we pointed out in the reply brief, but it was quite extensive. You've got, you know, people right at the time of the banging incident saying he was obviously drunk. You've got the saying that when they came to get him, they couldn't even understand him. He was slurring his speech. You've got the fact that when they're- after the shooting takes place, he's driving the car, and he's swerving all over the road to the point where Valencia eventually takes over and drives the car. So, and, you know, the evidence is he drank somewhere in the neighborhood of ten beers in a fairly short period of time, right before the first incident. And all this takes place in a fairly quick period of time. So, you know, you look at the California cases- I'm running out of time. I'm going to reserve my 41 seconds and think about basketball and how much can be done in 40 seconds. Thank you. Well, games can be won in a lot less than 40 seconds. Good morning. May it please the Court. In response to counsel's evidence or argument, excuse me, the evidence was, as the State Supreme- or Court of Appeals stated, extraordinarily strong on the defendant's intent and purpose. He acted very purposefully in this, and he acted intentionally. Should the State court- just to make sure I've got the analytical framework right- should the State court have applied a Chapman harmless error test? Our view is that it was State evidentiary error, and therefore they properly applied Watson. However, if, as the district court found, there was a due process violation, then yes. If there was a due process violation, if the instruction so infected the trial that it rose to the level of Federal constitutional error, then yes, you're correct. They should have applied Chapman. Then how- then if the State appellate court should have applied Chapman, assuming that's correct, and State courts don't give relief, and then they are in a Federal habeas court, they're supposed to apply Brecht. But how does- It is de novo, Your Honor. I do agree with that. As I reread my brief, we stated that it would be a deferential standard, but since the State court never applied the Federal test, and if, in fact, there is Federal constitutional error, then Brecht does apply, but it should be reviewed de novo. So I clarify that, and I apologize to the Court for any confusion on that in our brief. It's sort of a confusing change in the issue. So you're saying we should review what de novo? The harmless-if, in fact, there is Federal constitutional error and the Court, since the State court of appeal failed to use a Chapman test, then this Court would review Brecht, the harmless error analysis de novo, rather than giving deference to the State court of appeals conclusions. It's sort of the Brecht question is whether the appellate-the State appeals court's failure to apply Chapman, no, so we would apply- If I understand it correctly, it's a straight-up Brecht analysis. That's the way I understand it also, Your Honor. Failure to give the instruction had a substantial injurious effect on the verdict. Exactly, Your Honor. Which this Court, I believe, has ruled is really equivalent to the State harmless error test. Actually, it's kind of immaterial. Exactly, Your Honor. It happens to be fortuitously the same. I think that's what got the district court walking down the wrong path. Exactly, Your Honor. And as we point online here, though, I mean, the really important question, it seems to me, is whether the error was such that the jury's decision-making process was injuriously affected on account of their being unable to consider intoxication as a defense. As a defense, exactly, Your Honor. And I also do want to emphasize that it was just a part of the defense in which the erroneous instruction applied. It was to the shooting at an occupied building. Well, it's the intent to aid and abet is what is crucial, right? Exactly, yes, Your Honor. Okay. And so it was the intent to aid and abet the shooting of the building, from which it was reasonably foreseeable that people inside would end up getting killed. Exactly, Your Honor. But so my question is, why does the instructional error not such as to injuriously affect the decision-making process on that question? Because, Your Honor, the Valdez's, the defendant's own testimony and the evidence as a whole is so overwhelming on his that he actually did form the intent. He specifically denied having any intent. He made the threats to come back and kill the party, not just the bouncer, but the threat was to kill the party goers, to kill, I think, all of you expletives. Then he purposefully, he stated his purpose. His purpose was he was angry that his friend was injured. He also specifically testified that he felt guilty because his friend asked him where he had been during the fight, and he felt bad that he wasn't there to defend his friend. And additionally, for example, with the hand motion, he denied making the hand motion, and other witnesses saw him make it. And whether he made that or not really was a question of fact that the jury had before it and resolved against him that had nothing to do with whether he was intoxicated or not. In addition, when he said that he didn't know that Valencia had the gun at the time, they, he knew that, excuse me, he knew Valencia had brought the gun. He testified that he saw Valencia bring the gun into the car, so he knew that Valencia had brought a gun to the scene. He didn't know that he claimed that he went back to the car to get it, but he also testified that Valencia was behind him. If whether you're drunk or sober, if someone is behind you, you're not going to know what they're doing. So his acts were purposeful. They were intense. It showed strong intent. He carried out the very threats which he claimed he was going to carry out. Was he intoxicated when he made the threats? He probably was some, yes, he probably was intoxicated. The evidence is undisputed that he had been drinking. He was intoxicated when he made the threats, and he was intoxicated when he learned of the gun being grabbed by Valencia. Then why wouldn't the intoxication possibly negate his culpability for aiding and abetting? Your Honor, the question is whether he could actually form that intent and whether he actually did form that intent. And again, he never said, I don't remember making the threats, I didn't mean the threats, I was drunk. He categorically denied making those threats when he testified, and yet there was overwhelming evidence that he did make those threats. What if he was so drunk he didn't remember making the threats? But he, I think when you look at the totality of the circumstances, he went back and forth making those threats. And in fact, everything he said he was going to do, he purposefully did, and he remembered exactly why he was doing that. And our – basically we think the evidence was so overwhelming that even if there was Federal constitutional error, the evidence of the defendant's purposefulness and intent was – could not have affected the jury's verdict. And we're prepared to submit unless there's any further questions. I don't think so. Thank you. Thank you, Your Honor. Mr. Robinson. Just a couple of very quick points. I have my 40 seconds, but without timeout, so it's really not like basketball because that can last 15 minutes. The only judge who ever applied Chapman, although he didn't say he was applying Chapman, was Justice Mahara in his first opinion. He found that the error required reversal in his original dissenting opinion. I want to go back to a comment that Judge Reimer made in the beginning about natural and probable consequences, and it reflects a pretty fundamental error, I believe, that the district court judge made in this case, which is to say that the natural and probable consequences of the act of bringing the gun to the scene is what's at stake here. Actually, that's not true under California law because, as we pointed out in the briefs, the DA elects a target crime. The target crime in this case was shooting in an occupied building. So in order to get to the natural and probable consequence doctrine, the jury has to conclude that Mr. Valdez intended to aid and abet the crime of shooting at an occupied building. And that brings us back to the really important question here, which is what was happening at the moment of the shooting. And our point has been throughout. Mr. Valdez was completely focused in his drunken obsession with fighting the bouncer who had hurt his friend. And the fact of his intoxication goes a long way to explaining why he wouldn't have been aware of the fact that Valencia was behind him with a gun and about to do this shooting. Thank you. All right. Thank you, counsel. The matter just argued will be submitted.
judges: Noonan, Rymer, Gould